## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| **KAMBRA BRESLIN**, on behalf of herself and all others similarly situated, | : : : | Case No:  1:24-cv-279 |
| Plaintiff, | : : | Hon. |
| v. | : : | **COMPLAINT AND JURY DEMAND** |
| **THE RDI CORPORATION**, a corporation, | : : | |
| Defendant. | : : | |

## INTRODUCTION

1.     This is an action seeking  Court Supervised Notice pursuant to 29 U.S.C. § 216(b) and a Class Action pursuant to Fed. R. Civ. P. 23 by Plaintiff, Kambra Breslin ("Plaintiff"), individually and on behalf of all similarly situated persons employed by Defendant The RDI Corporation ("Defendant"), arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, The Nevada Wage and Hour Law, Nev. Rev. Stat. Ann. §§ 608.005, *et seq.* ("Nevada Wage Act"), and common law.

2.     Defendant The RDI Corporation's website states that Defendant is "an American call center with the goal of providing [its] clients with the support they need to support their customers."[1] "With 12 domestic and near-shore locations and over 5,000 in-house and work-from-home employees, [Defendant] focuses on the Customer Experience and [claims to] deliver[] value-driven results for multiple industries, including leading Fortune 500 client partners." Defendant

---

[1] *See* https://www.rdi-connect.com/services/american-call-center/ (last visited Apr. 29, 2024); *see also* https://rdicorp.com/about-us/ (last visited Apr. 29, 2024).

offers its "contact center services … 24 hours a day, 7 days a week, and 365 days a year"[2] and via phone, chat, email, text, and social omnichannel solutions.[3]

3.     In providing the aforementioned services, Defendant employed customer service representatives with job titles that include, but are not limited to, Call Center Customer Service Representative (collectively referred to as "CSRs"), in brick-and-mortar call centers and in remote call center settings across the United States. Defendant heavily relied on CSRs to, among other things, act as the go-to person for Defendant's customers by providing information regarding customer products and services, answering questions, and resolving customer inquiries or concerns via phone, email, and/or chat.

4.     Defendant classified its CSRs as non-exempt and tasked them with the primary job duty of providing over-the-phone and electronic customer service.

5.     The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[4]

6.     One of those abuses, which is at issue in this case, is the employer's refusal to pay for work from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id.* at p. 2.

7.     More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the

---

[2] *See* https://www.rdi-connect.com/services/24-7-call-center-solutions/ (last visited Apr. 29, 2024).
[3] *See* https://www.rdi-connect.com/ (last visited Apr. 29, 2024).
[4] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf (last visited Apr. 29, 2024).

FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

8.     Defendant violated the FLSA and common law by systematically failing to compensate its CSRs for work tasks completed before and after their scheduled shifts and during their unpaid meal periods, when they were not logged into Defendant's timekeeping system. This timekeeping procedure resulted in CSRs not being paid for all overtime hours worked, and in non-overtime workweeks, for regular hours.

9.     More specifically, Defendant failed to compensate CSRs for the substantial time they spent turning on and booting up their computer and computer systems prior to clocking into Defendant's timekeeping system and when returning from their meal periods; and putting to sleep and/or shutting down their computer after their last fielded call for the shift concluded and after clocking out of Defendant's timekeeping system.

10.     Plaintiff seeks a declaration that her rights, and the rights of the putative Plaintiffs and Class members, were violated, a judgment awarding them unpaid back wages, liquidated damages, attorneys' fees and costs to make them whole for damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

11.     At the earliest time possible, Plaintiff will request that Court-authorized notice of this action be sent, pursuant to 29 U.S.C. § 216(b), to all similarly situated employees who worked for Defendant at any time in the past three years.

## JURISDICTION AND VENUE

12.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claims, pursuant to 28 U.S.C. § 1331, because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq*.

13.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

14.     Defendant's annual sales exceed $500,000, and Defendant employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendant's CSRs engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

15.     This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of her federal claims.

16.     This Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Ohio, employs individuals within the state of Ohio, is registered with the Ohio Secretary of State, and maintains its principal place of business in the state of Ohio.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant employs CSRs in this District, conducts business in this District, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

**PARTIES**

18.      Plaintiff Kambra Breslin is a resident of Pahrump, Nevada and worked remotely for Defendant as an hourly, non-exempt CSR from approximately October 16, 2023 through April 18, 2024. Defendant compensated Plaintiff through the payment of an hourly rate, most recently $16.00 per hour. Plaintiff signed a consent to join this FLSA action, which is attached as **Exhibit A**.

19.     During the past three years, additional Opt-in Plaintiffs were or are employed as CSRs and their consent forms will also be filed in this case.

4

20.     Defendant The RDI Corporation is a corporation (Entity No. 539068), and maintains its principal place of business in Cincinnati, Ohio. Defendant's registered agent for service of process is listed as George Trebbi, 9920 Carver Road, Cincinnati, Ohio, 43242.

## GENERAL ALLEGATIONS

21.     Prior to hiring prospective CSRs, Defendant provided them with a written offer setting forth the job title, the offered rate of pay, and the conditions of their employment.

22.     Defendant maintained documents demonstrating the promised hourly wage for each CSR, including, but not limited to: offer letters, paystubs, and/or payroll records.

23.     Plaintiff received an offer from Defendant to work as a CSR, and she accepted Defendant's offer with the understanding that her base hourly rate would be paid for all hours worked.

24.     Plaintiff performed under her agreement with Defendant by carrying out her job duties and responsibilities. More specifically, Plaintiff fielded incoming phone calls from Defendant's customers' clients and resolved claim issues and identified provider information for them. Plaintiff utilized Defendant's applications and systems to track all events and customer service information. Plaintiff additionally performed the required unpaid off-the-clock work explained below.

25.     Defendant paid its CSRs at varying hourly rates.

26.     Defendant's CSRs typically worked five (5) days each week and up to, and on occasion more than, forty (40) hours per week.

27.     There were one or more instances during Plaintiff's employment when she worked forty (40) hours or more in a workweek.

28.     Defendant provided training to CSRs, on, *inter alia*, how to carry out their day-to-day job duties; how to track their time; how to load and log into their computer programs at the

beginning of the day and how to log out at the end of the day; attendance, schedule, and call quality expectations; and Defendant's policies. The training that all of Defendant's CSRs received was substantially, if not entirely, the same, and Defendant's CSRs, including Plaintiff, were subject to the same relevant policies and procedures.

29. At all relevant times, Defendant controlled Plaintiff's and all other CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

30. Defendant required Plaintiff and all other CSRs to use a computer and a variety of essential and indispensable computer programs, applications, and servers in order to perform their job duties.

31. Defendant instructed Plaintiff and other similarly situated CSRs to be "call ready" the moment their scheduled shift started or within five (5) minutes of the start of their shift. This required Defendant's CSRs to load and log into essential work-related computer programs and applications *before* the start of their shifts so they could be prepared to field calls the moment their shifts began or within five (5) minutes thereof.

32. During the boot-up and login process, Defendant's CSRs experienced technical difficulties, increasing the amount of off-the-clock work they performed that shift.

33. Defendant's CSRs necessarily had to perform off-the-clock work every shift because Defendant relied exclusively on a web-based timekeeping system to track its CSRs' hours, including Plaintiff's hours, worked. Therefore, Defendant's CSRs were unable to clock in unless and until they performed off-the-clock work before the start of their scheduled shifts and before they could access and log into (and therefore clock into) the program.

34. Defendant enforced its "call ready" policy and required its CSRs to perform off-the-clock through its uniform attendance, compensation, timekeeping, and schedule adherence procedures; and the call quality assurance system it used.

6

35. Defendant additionally maintained schedule attendance and adherence metrics pursuant to which it monitored the CSRs' clock-in times in relation to their start-of-shift time, as well as the time the CSRs went into a "ready" status.

36. All of Defendant's CSRs used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and an indispensable part of the CSRs' work and they could not perform their jobs without them.

37. Defendant's CSRs also performed off-the-clock work when returning from lunch and preparing themselves to be "call ready" the moment their meal periods concluded.

38. Similarly, Defendant's CSRs, including Plaintiff, performed work off-the-clock after their scheduled shift and after clocking out of Defendant's timekeeping system when they put to sleep and/or shut down their computer.

39. At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and its CSRs in order to pressure them into performing pre-, mid-, and post-shift work off-the-clock.

40. The pre-, mid-, and post-shift off-the-clock time Plaintiff and all other CSRs spent booting-up/logging into and shutting down their computers and applications and programs directly benefitted Defendant and was integral and indispensable to the CSRs' job responsibilities.

41. As a result of the off-the-clock work described herein, Plaintiff and other CSRs were unlawfully deprived of approximately thirteen (13) to eighteen (18) minutes of compensation every day.

42. At all relevant times, Defendant was able to track the amount of time Plaintiff and other CSRs spent in connection with the pre-, mid-, and post-shift activities; however, Defendant

7

failed to do so and failed to compensate Plaintiff and all other CSRs for the off-the-clock work they performed, thus breaching its contracts with its CSRs.

43.     Further, Defendant was aware that by relying exclusively on a web-based timekeeping system, some off-the-clock work was bound to occur every day.

44.     Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

45.     Despite knowing Plaintiff and all other CSRs performed this pre-, mid-, and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

46.     Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other CSRs booted-up and logged into their computers each day, along with the time they logged into the timekeeping system.

47.     Upon information and belief, Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiff and other CSRs experienced technical issues.

48.     Because Defendant required its CSRs, including Plaintiff, to perform pre-, mid-, and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time CSRs spent working for Defendant. Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they worked.

**A.  Pre-Shift Off-the-Clock Work**

49.     The off-the-clock pre-shift process took substantial time on a daily basis, approximately ten (10) to fifteen (15) minutes per shift. Specifically, before each shift CSRs were required to undertake the following essential work tasks:

    a.  Turn on or wake up their computer;

    b.  Log into Microsoft Windows using their username and/or password;

    c.  Log into Citrix using a username and password;

    d.  Open Defendant's Gridcard (Defendant's security authentication process) and enter the appropriate letter and number into the computer field to access Defendant's workspace;

    e.  Open various Knowledge Now articles that assisted CSRs with fielding their calls;

    f.  Open One Tool (Defendant's program for tracking customer interactions);

    g.  Open Microsoft Teams (the application CSRs used to communicate with other employees and supervisors during their shift);

    h.  Open Microsoft Outlook;

    i.  Open iSet (the application CSRs used for accessing Defendant's customers' claims);

    j.  Open Links (the application CSRs used for accessing benefit information);

    k.  Open Google Chrome;

    l.  Log into Defendant's timekeeping program; and

    m.  Clock in.

50.    Defendant's CSRs had to complete this process before the start of their scheduled shifts and before fielding calls. Consequently, the CSRs had to arrive to work approximately ten (10) to fifteen (15) minutes before their scheduled shifts to complete their above-described start-up and log-in activities.

51.    Defendant's CSRs were not compensated for all or some of this time because: (1) Defendant relied exclusively on a web-based timekeeping system that Defendant's CSRs could not access unless and until they performed work off-the-clock; (2) Defendant required CSRs to be phone ready by the start of their scheduled shift or within five (5) minutes thereof and the described

9

duties took longer than five (5) minutes to perform each day; and (3) Defendant prohibited CSRs from clocking into the timekeeping software before the start of the scheduled shifts.

52.     Thus, in workweeks where Defendant's CSRs worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendant violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; and (2) record all of the time that its CSRs, including Plaintiff, worked for Defendant's benefit.

53.     The pre-shift off-the-clock work CSRs performed directly benefited Defendant and was integral and indispensable to their job duties and responsibilities.

54.     Plaintiff and other CSRs were subject to Defendant's uniform Pre-Shift Off-the-Clock policy and practice that violated the FLSA.

**B.  Meal-Period Off-the Clock Work**

55.     Defendant promised its CSRs one unpaid 30-minute meal period each eight (8) hour shift.

56.     Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be <u>*completely relieved*</u> from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

57. Defendant did not provide CSRs with legitimate bona fide meal periods because it required the CSRs to return to their computer stations prior to the end of their unpaid meal periods to log back into their computer and place themselves in a "ready" state so they could resume fielding calls promptly at the end of their scheduled meal periods.

58. If CSRs were not logged back into the phone system and ready to take calls and electronic correspondence promptly at the conclusion of their scheduled meal breaks, they were considered "out of adherence" and could be subjected to disciplinary action.

59. CSRs spent approximately two (2) minutes performing this work during their unpaid meal periods. Thus, Defendant maintained a common plan and policy pursuant to which it failed to pay CSRs for no less than two (2) minutes per day of work performed during their meal periods.

60. The off-the-clock work Plaintiff and other CSRs performed during their meal periods was compensable, directly benefitted Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the CSRs' job duties and responsibilities.

61. In workweeks where Defendant's CSRs worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendant violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; and (2) record all of the time that its CSRs, including Plaintiff, worked for Defendant's benefit.

62. Defendant's management was aware that Plaintiff and other CSRs performed this off-the-clock work, but permitted and even rewarded it through Defendant's metrics, compensation and timekeeping policies, and schedule adherence requirements.

63.     Plaintiff and other CSRs were subject to Defendant's uniform Meal-Period Off-the-Clock policy and practice that violated the FLSA.

**C. Post-Shift Off-the Clock Work**

64.     Pursuant to Defendant's policies, training, and direction, Plaintiff and all other CSRs were required to clock out the moment their scheduled shift concluded or when they finished fielding their last call for the shift and *before* putting to sleep or shutting down their computer.

65.     This resulted in Plaintiff and other CSRs performing at least one (1) minute of off-the-clock work every shift.

66.     Thus, in workweeks where Defendant's CSRs worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendant violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; and (2) record all of the time that its CSRs, including Plaintiff, worked for Defendant's benefit.

67.     The post-shift off-the-clock work Plaintiff and other CSRs performed was compensable, directly benefited Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities.

68.     Plaintiff and other CSRs were subject to Defendant's uniform Post-Shift Off-the-Clock policy and practice that violated the FLSA.

**D. The Off-the-Clock Work Results in Viable "Gap Time" Claims**

69.     "Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc*., 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *see also Conner v. Cleveland*

12

*Cty.*, *N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

70. Plaintiff, and similarly situated CSRs, regularly worked non-overtime hours (i.e., "gap time") for which they were not paid.

71. During the weeks that CSRs do not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight time wages, in breach of Defendant's contracts with its CSRs.

72. Defendant's uniform Off-the-Clock policies and practices that violated the FLSA resulted in viable "Gap Time" claims.

**E. Plaintiff's Exemplary Workweeks**

73. The FLSA and regular wage violations discussed herein occurred throughout Plaintiff's employment with Defendant; however, as an example of one instance where Defendant failed to pay Plaintiff regular wages for work performed and overtime for hours worked in excess of forty (40) hours (as mandated by the FLSA), Plaintiff identifies the following earnings statements:

<u>**April 1 – April 14, 2024**</u>

- Plaintiff worked less than 40 hours in both workweeks at a rate of $16.00 per hour and upon information and belief was paid $16.00 for each regular hour worked.

- With pre-, mid-, and post-shift off-the-clock work, and for both workweeks within the pay period, Plaintiff should have been paid an additional thirteen (13) to eighteen (18) minutes or more at her regular rate of $16.00 for each regular hour.

**Ex. B**, Breslin 4/1/24 – 4/14/24 Earnings Statement.

<u>**March 4 – March 17, 2024**</u>

- Plaintiff worked more than 40 hours at an overtime rate of $24.00 per hour and upon information and belief was paid $24.00 per hour in overtime.

13

- With pre-, mid-, and post-shift off-the-clock work, Plaintiff should have been paid an additional thirteen (13) to eighteen (18) minutes or more at her overtime rate of $24.00 for each hour worked in excess of 40 in the overtime workweek(s).

**Ex. C**, Breslin 03/04/24 – 03/17/24 Earnings Statement.

## <u>SIMILARLY SITUATED ALLEGATIONS</u>

74. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> *All current and former similarly situated CSRs who work or have worked for Defendant at any time in the past three years.*

(hereinafter referred to as the "Putative Plaintiffs"). Plaintiff reserves the right to amend this definition if necessary.

75. Excluded from the definition of the Putative Plaintiffs are Defendant's executives, administrative and professional employees, including computer professionals and outside salespersons.

76. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

77. Consistent with Defendant's policies and practice, Plaintiff and the Putative Plaintiffs were not paid for all straight and/or premium overtime compensation in workweeks during which they worked forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

78. All of the work Plaintiff and the Putative Plaintiffs performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the Putative Plaintiffs performed.

14

79.     Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the Putative Plaintiffs for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

80.     As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the Putative Plaintiffs. This policy and pattern or practice includes, but is not limited to:

      a. Willfully failing to pay its employees, including Plaintiff and the Putative Plaintiffs, for all regular hours that they worked off-the-clock in non-overtime workweeks;

      b. Willfully failing to pay its employees, including Plaintiff and the Putative Plaintiffs, for all premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek; and

      c. Willfully failing to record all of the time that its employees, including Plaintiff and the Putative Plaintiffs, worked for the benefit of Defendant.

81.     Defendant's unlawful conduct was (and is) widespread, repeated, and consistent.

82.     An action for Court Supervised Notice under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

83.     The employment relationships between Defendant and every proposed Putative Plaintiff are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed Putative Plaintiff, to wit: whether the Putative Plaintiffs are 1) required

to work uncompensated boot-up and log-out time; and 2) entitled to their regular hourly wage in non-overtime workweeks and overtime for hours worked over forty (40) in a week.

84.     Plaintiff estimates the Putative Plaintiffs, including both current and former CSRs over the relevant period, includes hundreds, if not thousands, of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

85.     Plaintiff and the Putative Plaintiffs were subject to Defendant's uniform Off-the-Clock policy and practices that violated the FLSA.

86.     Plaintiff and the Putative Plaintiffs' claims are based on the same legal theories, namely, Defendant's statutory violations, and proof of Defendant's violations, as well as Defendant's unlawful conduct, will be common across all Putative Plaintiffs.

87.     Plaintiff asserts that at least a strong likelihood exists that she is similarly situated to the Putative Plaintiffs.

88.     The Putative Plaintiffs should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the Putative Plaintiffs, who were unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which Defendant unlawfully withheld from them.

### RULE 23 NEVADA STATE LAW CLASS ACTION ALLEGATIONS

89.      Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former hourly CSRs who work or have worked for Defendant at any location in Nevada during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nevada Class"). Plaintiff reserves the right to amend this definition if necessary.

16

90.     The members of the Rule 23 Nevada Class are so numerous that joinder of all Rule 23 Nevada Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds, if not thousands, of Rule 23 Nevada Class members. Rule 23 Nevada Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

91.     There is a well-defined community of interests among Rule 23 Nevada Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nevada Class. These common legal and factual questions, include, but are not limited to, the following:

> a.   Whether the pre-shift time Rule 23 Nevada Class members spent on startup and login activities before "clocking in" for each shift is compensable;
>
> b.   Whether the time that Rule 23 Nevada Class members spent on work activities during their lunch break, such as logging back into their computer and placing themselves in a "ready" state, is compensable;
>
> c.   Whether the post-shift time Rule 23 Nevada Class members spent putting to sleep and/or shutting down their computer after "clocking out" is compensable;
>
> d.   Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 Nevada Class member regular wages or minimum wage for each non-overtime hour worked;
>
> e.   Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 Nevada Class member overtime compensation for each overtime hour worked; and
>
> f.   Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating the state laws and wage acts applicable to the members of the Rule 23 Nevada Class.

92.     Plaintiff's claims are typical of those of the Rule 23 Nevada Class in that she and all other Rule 23 Nevada Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the

same pay policies, practices, promises and course of conduct as all other Rule 23 Nevada Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nevada Class members.

93.     Plaintiff will fully and adequately protect the interests of the Rule 23 Nevada Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nevada Class.

94.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nevada Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

95.     This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

96.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

97.     Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nevada Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nevada Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

18

**RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

98.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former similarly situated CSRs who worked for Defendant at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

99.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds, if not thousands, of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

100.     There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

    a.  Whether the pre- and mid-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

    b.  Whether the post-shift time Rule 23 Nationwide Class members spent putting to sleep and/or shutting down their computers is compensable time under applicable law;

    c.  Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

    d.  Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

101.    Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

102.    Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

103.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

104.    This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

105.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

106.    Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the

20

Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**FLSA COLLECTIVE ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME**

107.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

108.    At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

109.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

110.    At all times relevant to this action, Plaintiff and the Putative Plaintiffs were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

111.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the Putative Plaintiffs to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

112.    Plaintiff and Putative Plaintiffs, by virtue of their job duties and activities actually performed, were all non-exempt employees.

113.    Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

114.    The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

21

115. The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

116. At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and the Putative Plaintiffs to work off-the-clock, every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks and the federally mandated overtime compensation for all work performed.

117. The off-the-clock work performed every shift by Plaintiff and the Putative Plaintiffs was an essential part of their jobs and these activities and the time associated with these activities was significant.

118. In workweeks where Plaintiff and other Putative Plaintiffs worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including a shift differential where applicable. 29 U.S.C. § 207. Further, all "gap time" should have been paid at Plaintiff and the FLSA Collective's regular hourly rate.

119. As a result of Defendant's unlawful policies and practices, Plaintiff and the Putative Plaintiffs were deprived of both straight time and overtime wages in violation of the FLSA.

120. Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the Putative Plaintiffs for all work activities but did not.

121. As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Defendant including unpaid wages (including unpaid overtime), an additional equal

amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

**COUNT II**
**RULE 23 NEVADA CLASS ACTION**
**VIOLATIONS OF THE NEVADA WAGE AND HOUR LAWS,**
**NEV. REV. STAT. ANN., §§ 608.005, *et seq.* ("NEVADA WAGE ACT")**

122.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

123.     At all times relevant to the action, Defendant was an employer covered by the overtime and wage mandates of the Nevada Wage Act and the Rule 23 Nevada Class were employees entitled to the Nevada Wage Act's protections. *See* Nev. Rev. Stat. Ann. §§ 608.010, 608.011.

124.     The Nevada Wage Act entitles employees to compensation for every hour worked in a workweek. *See* Nev. Rev. Stat. Ann. §§ 608.012, 608.016.

125.     The Nevada Wage Act, Nev. Rev. Stat. Ann. §§ 608.005, *et seq.* provides that employees are entitled to minimum wages "for each hour the employee works," Nev. Rev. Stat. Ann. § 608.016, and overtime compensation calculated at time-and-a-half of their regular rate of pay for each hour worked each week in excess of forty (40). Nev. Rev. Stat. Ann. § 608.018.

126.     The Nevada Wage Act entitles employees to overtime compensation at a rate equal to 1.5 times the employee's regular rate of pay for all hours worked in excess of forty (40) hours per week or eight (8) hours per day, assuming the employee earns less than 1.5 times the Nevada minimum wages. *See* Nev. Rev. Stat. Ann. § 608.018.

127.     The Nevada Wage Act entitles employees to an uninterrupted and duty-free meal period of at least a thirty-minute duration when the scheduled work shift exceeds eight (8) consecutive hours of work. *See* Nev. Rev. Stat. Ann. § 608.019.

128.     Nev. Rev. Stat. Ann. § 608.260 provides that an employee may bring a civil action against an employer for failing to pay minimum wage and overtime compensation.

129.     Defendant violated the Nevada Wage Act by regularly and repeatedly failing to compensate the Rule 23 Nevada Class for the time spent on the work activities described in this Complaint.

130.     Defendant's uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

131.     As a result, the Rule 23 Nevada Class has and will continue to suffer loss of income and other damages. Accordingly, the Rule 23 Nevada Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the Nevada Wage Act at an amount to be proven at trial.

### COUNT III
### RULE 23 NATIONWIDE CLASS ACTION
### BREACH OF CONTRACT

132.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

133.     At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

134.     Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for CSR work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages.

135.    For example, Defendant offered to compensate Plaintiff at a minimum of $16.00 per hour if she agreed to perform services for Defendant as a CSR. Plaintiff accepted Defendant's offer and performed her duties as CSRs in reliance on the offer.

136.    Defendant breached its contractual promises by failing to pay CSRs at their fixed, pre-agreed upon hourly rate for all of the hours worked.

137.    Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate of approximately $16.00 per hour within the applicable period.

138.    Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-, mid-, and post-shift work described herein.

139.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

140.    Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

141.    Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated

minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims for non-overtime hours/workweeks).

142.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

143.    As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT IV**
**RULE 23 NATIONWIDE CLASS ACTION**
**UNJUST ENRICHMENT**

144.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

145.    This Count is pled in the alternative to Count III, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

146.    At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

147.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

148.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant were unjustly enriched.

149.    Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

150.     Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

151.     Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

152.     Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

153.     Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

154.     As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

155.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests the following relief:

a.     An Order authorizing Court Supervised Notice pursuant to the FLSA, 29 U.S.C. § 216(b), and an order directing Defendant to provide Plaintiff a list of all current and former hourly customer service representatives who work or have worked for Defendant at any time in the past three years. This list shall include the last known addresses, emails, and telephone number of each such person, so that Plaintiff can give those individuals notice of this action and an opportunity to make an informed decision about whether to participate;

b.     In the event the Defendant seeks to have discovery on the issues of whether the Putative Plaintiffs are similarly situated to Plaintiff, an order tolling the FLSA

statute of limitations for the Putative Plaintiffs as of the filing of this Complaint through the end of the *Clark* discovery period;

c.     An Order certifying this action as a class action (for the Rule 23 Nevada Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's Nevada state law claims (Count II);

d.     An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract claim (Count III);

e.     An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's unjust enrichment claim (Count IV);

f.     An Order designating the Plaintiff as representative of the FLSA Collective, the Rule 23 Nevada Class, and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

g.     An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

h.     An Order declaring Defendant's violations of the FLSA were willful;

i.     An Order declaring Defendant violated Nevada state law for failing to pay Plaintiff and the Rule 23 Nevada Class the minimum wage and overtime compensation to which they were entitled;

j.     An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

k.     An Order declaring Defendant was unjustly enriched by the off-the-clock work it required Plaintiff and the members of the Rule 23 Nationwide Class to perform;

l.     An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the Putative Plaintiffs, the Rule 23 Nevada Class, the Rule 23 Nationwide Class the full amount of damages and penalty damages available by law;

m.     An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

n.     An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

o.     An Order awarding such other and further relief as this Court deems appropriate.

Dated: May 14, 2024           Respectfully Submitted,

*/s/ Robert E. DeRose*
Robert E. DeRose (OH Bar No. 0055214)
**BARKAN MEIZLISH DEROSE COX, LLP**
4200 Regent Street, Suite 210
Columbus, OH 43219
Telephone: 614-221-4221
bderose@barkanmeizlish.com

Jason J. Thompson (*Pro Hac Vice forthcoming*)
Alana A. Karbal (*Pro Hac Vice forthcoming*)
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
jthompson@sommerspc.com
akarbal@sommerspc.com

*Attorneys for Plaintiff and the Putative*
*Collective/Class Members*

## JURY DEMAND

Plaintiff, Kambra Breslin, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: May 14, 2024           Respectfully Submitted,

*/s/ Robert E. DeRose*
*One of the Attorneys for Plaintiff and the Putative*
*Plaintiffs/Class Members*